IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ASKARI DANSO M.S. LUMUMBA,   )  | |
|     Plaintiff,   ) | Case No. 7:22-cv-00396 |
| ) | |
| v.   ) | |
| ) | By: Michael F. Urbanski |
| HAROLD CLARKE, et al.,   ) | Chief United States District Judge |
|     Defendants.   ) | |

### MEMORANDUM OPINION

Askari Danso M.S. Lumumba, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against eight individuals employed by the Virginia Department of Corrections ("VDOC"), asserting violations of his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Seven of the defendants have filed a motion to dismiss to which Lumumba has responded. ECF Nos. 22 and 27. For the reasons set forth below, the court will grant the motion to dismiss. The court will also dismiss the claim asserted against the eighth defendant, John Doe, pursuant to 28 U.S.C. § 1915A(b)(1).

### Background

Lumumba is currently serving a 53-year sentence in the custody of the Virginia Department of Corrections ("VDOC"). Compl., ECF No. 1-1, at ¶ 4. This action arises from events that allegedly occurred in 2020, after Lumumba was transferred from Red Onion State Prison to River North Correctional Center ("River North"). He has since been moved to Greensville Correctional Center. See Notice of Change of Address, ECF No. 12.

Lumumba alleges that he suffered several panic attacks while being transported to River North in a "paddy wagon van" on June 4, 2020. Compl. ¶¶ 13–14. Upon arriving at the facility,

Lumumba learned that the cells did not have windows. Id. ¶ 15. He immediately submitted a written request to speak with a Qualified Mental Health Professional ("QMHP") about his anxiety issues. Id. ¶ 16. QMHP Swann met with Lumumba on June 5, 2020, and sent him a packet discussing anxiety. Id. ¶ 17.

On June 7, 2020, Lumumba submitted another written request to the medical department in which he complained that his windowless cell was causing anxiety, depression, and anger. In a subsequent response, QMHP Spangler noted that handouts had been sent to Lumumba. Id. ¶ 18.

On July 6, 2020, Lumumba submitted an emergency grievance requesting a mental health screening. Spangler responded that handouts had been provided and that Lumumba should submit the appropriate form for requesting a screening. Id. ¶ 19.

On July 7, 2020, Lumumba submitted a complaint asserting that the mental health department was exhibiting indifference to his medical needs. In a response dated July 10, 2020, QMHP Haynes noted that the mental health department had responded to Lumumba's requests, that Lumumba had been provided information regarding coping skills for anxiety, and that he should let the mental health department know if he was experiencing an emergency. Id. ¶ 20.

On July 15, 2020, Lumumba submitted a regular grievance alleging that he had not been seen by anyone in the mental health department. Id. ¶ 21. In a response provided the following day, Warden Kanode noted that the mental health department had provided information on coping skills and that someone from the mental health department had personally met with Lumumba to discuss his anxiety issues. Kanode therefore determined that

the mental health department had provided proper mental health services. Id. Kanode's decision was upheld by the VDOC's Health Services Director. Id. ¶ 23.

While walking to the visitation area on September 1, 2020, Lumumba encountered a canine officer identified in the complaint as "John Doe." Id. ¶ 24. Lumumba alleges that Doe directed his dog to run within inches of him and lunge toward him before pulling the dog back. Id. As Lumumba walked away, he demanded that the officer move the dog back and "exclaimed that Doe knows his dog is trained to attack persons perceived to be a threat." Id. ¶ 25. Upon returning from the visitation area, Lumumba asked Doe for his name. In response, Doe cursed at him and said, "[Y]ou keep running your mouth, we gonna have a problem!" Id. ¶ 26.

On September 3, 2020, Lumumba submitted a complaint alleging that Doe had subjected him to a risk of being harmed by the canine. In response, Captain Crigger advised Lumumba that he would stay safe as long as he remained in the authorized area on the boulevard. Id. ¶ 27.

On September 27, 2020, Lumumba wrote to the mental health department and complained that he had been "menaced by canine officer Doe" and that the experience was causing panic attacks and episodes of anxiety for which he was requesting care. Id. ¶ 28. A few days later, QMHP Spangler called Lumumba into an office where several correctional officers were also present. Lumumba informed Spangler that "speaking in front of officers caused him anxiety," and he "asked for privacy since the issue he was discussing concerned corrections officers." Id. ¶ 29. In response, Spangler told Lumumba that she could not meet with him privately. Consequently, Lumumba "refused to speak." Id.

On October 3, 2020, Lumumba submitted a complaint concerning a River North policy, allegedly implemented by Kanode and Anderson, which allows canines to be within two to three feet of inmates when walking to and from outside recreation or the dining area. On October 8, 2020, Captain Crigger informed Lumumba that he would be okay if he remained inside the red lines. Id. ¶ 30.

On October 11, 2020, Lumumba submitted a complaint asserting that Spangler had violated his right to privacy by refusing to meet with him without corrections staff being present. In response, Spangler informed Lumumba that she was not required to meet with him privately "because it could pose a safety concern." Id. ¶ 31.

On April 13, 2021, Lumumba complained that his anxiety had gone untreated because the mental health department would not provide a private mental health screening. That same day, Senior QMHP Haynes responded that the facility's interest in safety and security "always outweighs female staff being alone with an inmate." Id. ¶ 32.

On May 2, 2021, Lumumba submitted a request to the mental health department in which he alleged that his experiences at River North had intensified his anxiety and that he needed assistance. He also noted that he would be willing to sit in a security chair but that he did not want to speak with a member of the mental health department in front of security staff. On May 11, 2021, Haynes responded that Lumumba would not be speaking to a QMHP without security staff being present. Id. ¶ 33.

On May 27, 2021, Lumumba was scheduled to be transported to a dental appointment in Danville, Virginia. Upon learning that he would be riding in a "paddy wagon van" again, Lumumba refused to attend the appointment. Id. ¶ 35. Later that afternoon, Warden

Anderson met with Lumumba and assured him that he could be transported in a car with windows if he agreed to go to the dentist. Lumumba agreed to go and explained that his transportation concerns were not documented because mental health staff would not meet with him privately. Id. ¶ 36.

That same day, QMHP Sturdivant, a male employee, placed Lumumba in a security chair to meet with him. Although a correctional officer agreed to leave the room, Sturdivant directed the officer to stay. Sturdivant "explained that he was keeping security in the room per the orders of his supervisor," Senior QMHP Haynes. Id. ¶ 38. Lumumba subsequently submitted a complaint alleging that Haynes was "breaching her duty as a QMHP to provide care" by seeking to prove that mental health staff did not have to meet with Lumumba privately. Id. ¶ 39.

On May 28, 2021, Lumumba was called to the administrative building and placed in a cage by a property officer. Id. ¶ 40. Shortly thereafter, Sturdivant and a female staff member entered the room, and Sturdivant asked the property officer to wait by the door. When Lumumba indicated that he would not speak to Sturdivant in front of the property officer, Sturdivant yelled at him and accused him of wasting the employees' time. Id. ¶ 43. Sturdivant and the female staff member then left the room as Lumumba accused them of conspiring with other employees who had refused to speak with him privately. Id. ¶ 44.

Later that evening, Lumumba drafted a complaint asserting that the mental health department was "playing with his health." Id. ¶ 45. In response, Haynes indicated that the mental health department "was trying to meet with Lumumba but he continued refusing care." Id.

On November 9, 2021, Lumumba submitted another complaint "after his frustration with staff was beginning to make him think racist thoughts causing negative emotional experiences like frustration, anxiety, anger, and rage." Id. ¶ 46. He asked to speak to an African American QMHP regarding his concerns. On November 16, 2021, Haynes instructed Lumumba to submit a request form if he wished to talk to a clinician. Id.

Based on the foregoing allegations, Lumumba filed this action under 42 U.S.C. § 1983 against Harold Clarke, the Director of the VDOC; Joseph Walters, the Deputy Director of Administrations; Anderson, the Warden of River North; Kanode, the former Warden of River North; Senior QMHP Haynes; QMHPs Spangler and Sturdivant; and Canine Officer John Doe. His complaint asserts the following claims:

> Count I: Defendants Clarke and Walters violated Lumumba's right to due process under the Fourteenth Amendment by failing to create a regulation that would require prison officials to keep his medical records private in accordance with federal and state law.
>
> Count II: Defendants Haynes, Sturdivant, and Spangler acted with deliberate indifference to Lumumba's medical needs in violation of the Eighth Amendment by refusing to meet with him privately to provide mental health care.
>
> Count III(a): Defendants Kanode and Anderson acted with deliberate indifference to Lumumba's safety in violation of the Eighth Amendment by implementing a policy that allowed canines to be located within two to three feet of his body.
>
> Count III(b): Defendant John Doe acted with deliberate indifference to Lumumba's safety by allowing a canine to approach within one foot of his body and jump at him before pulling back on the canine's leash.

Id. ¶¶ 54–74. Lumumba seeks declaratory relief, injunctive relief, and monetary damages. Id. at 17–19.

**Standard of Review**

Clarke, Walters, Anderson, Kanode, Haynes, Spangler, and Sturdivant have moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). Pursuant to this provision, a party may seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Similarly, under the Prison Litigation Reform Act, the court may sua sponte dismiss a prisoner's complaint against a governmental officer or employee "if the complaint . . . fails to state a claim upon which relief can be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**Discussion**

Lumumba filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution and laws of the United States, and that the alleged deprivation was committed under color of state law." Thomas v. Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks and citation omitted).

7

### A. Due Process Claim

Lumumba claims that Clarke and Walters violated his right to due process by failing to create a regulation that would require prison officials to keep his medical information private. The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. § XIV, § 1. In order to claim entitlement to the protections of the Due Process Clause, "a plaintiff must first show that he has a constitutionally protected liberty or property interest, and that he has been deprived of that protected interest by some form of state action." Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (internal quotation marks and citations omitted). "Without a protected liberty or property interest, there can be no federal procedural due process claim." Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 579 (1972)).

In this case, Lumumba points to three sources for the existence of an alleged liberty interest in keeping his medical information private: (1) the constitutional right to privacy; (2) the federal Health Insurance Portability and Accountability Act ("HIPAA"); and (3) the Virginia Health Records Privacy Act ("VHRPA"). See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (observing that "[a] liberty interest may arise from the Constitution itself, by reasons of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies"). The court will address each in turn.

The United States Court of Appeals for the Fourth Circuit has recognized that the "constitutional right to privacy extends to the individual interest in avoiding disclosure of personal matters." Payne v. Taslimi, 998 F.3d 648, 655 (4th Cir. 2021) (internal quotation

8

marks, ellipsis, and citations omitted). "But that 'right to privacy' protect[s] 'only information with respect to which the individual has a reasonable expectation of privacy.'" Id. (quoting Walls v. City of Petersburg, 895 F.2d 188, 193 (4th Cir. 1990)); see also Walls, 895 F.2d at 192 ("Personal, private information in which an individual has a reasonable expectation of confidentiality is protected by one's constitutional right to privacy.").

In Payne, the Fourth Circuit held that a prisoner had no reasonable expectation of privacy in information concerning his HIV diagnosis or treatment. 998 F.3d at 658–660. In reaching its decision, the Court emphasized that a prisoner's reasonable expectations of privacy are "quite limited." Id. at 658; see also Hudson v. Palmer, 468 U.S. 517, 525–26 (1984) (holding that an inmate lacked a reasonable expectation of privacy in his prison cell). For instance, the Fourth Circuit previously "found a 'reasonable expectation of privacy' in 'bodily privacy and integrity' to be violated by surgery to remove a cosmetic implant from an inmate's genitals." Payne, 998 F.3d at 658 (quoting King v. Rubenstein, 825 F.3d 206, 214–15 (4th Cir. 2016)). The Court explained that the "interest in bodily integrity involved the most personal and deep-rooted expectations of privacy" and that "many sexually invasive searches will involve an objectively extreme intrusion on those expectations of privacy." Id. (internal quotation marks, brackets, and citations omitted). The Court concluded, however, that information about an inmate's HIV diagnosis and medication was not subject to the same expectations of privacy that it had found protected in prison:

> Unlike an inmate's bodily integrity, one's communicable-disease diagnosis lacks any deep roots in the expectation of privacy and falls far from the most personal invasions into an inmate's body. Disclosure of [the inmate's] diagnosis and medication information simply does not implicate the same Fourth Amendment concerns as forcing someone to, for example,

9

> undergo surgery or subject themselves to invasive medical procedures.

Id. (citation and footnote omitted).

Applying the same reasoning, the court concludes that Lumumba does not plausibly allege that he has a reasonable expectation of privacy with respect to his medical records and communications with medical personnel. Lumumba claims that he experienced anxiety, panic attacks, and depression after being transferred to River North. As was true in Payne, however, Lumumba has "a reduced expectation of privacy in prison," and his alleged mental health symptoms are not comparable to sexually invasive searches or other "personal invasions into an inmate's body." Id. at 658–59. Moreover, Lumumba's complaint is "otherwise devoid of allegations that would suggest, let alone establish, that this type of medical information warrants greater protections than an often-stigmatized communicable disease, like HIV." Kelley v. Newton, No. 7:21-cv-00499, 2023 WL 4687932, at *2 (W.D. Va. July 21, 2023). While Lumumba may "subjectively . . . like to keep [his medical] information to himself," he has failed to allege facts sufficient to show that any subjective expectation of privacy is reasonable. Payne, 998 F.3d at 660. And in the absence of any reasonable expectation of privacy, Lumumba lacks a constitutional right to privacy with respect to his medical information. See id. at 657.

Lumumba alternatively argues that he has a "right to have [his] medical communications kept private" under both HIPPA and the VHRPA. Pl.'s Mem. Opp'n Mot. Dismiss, ECF No. 27, at 2. For a statute to create a protected liberty interest, "it must confer more than a mere expectation (even one supported by consistent practice) of a benefit." Smith v. Ashcroft, 295 F.3d 425, 429 (4th Cir. 2002). "There must be entitlement to the benefit as

10

directed by the statute, and the statute must act to limit meaningfully the discretion of the decisionmakers." Id. (internal quotation marks and citations omitted). Stated differently, the statute must be "worded in such a way that an inmate could reasonably expect to enforce [it] against the prison officials." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 465 (1989). Additionally, even if a statute is shown to be sufficiently mandatory, an inmate must also demonstrate "that deviating from that [statute] 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" Desper v. Clarke, 1 F.4th 236, 247 (4th Cir. 2021) (second alteration in original) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Applying these principles, the court concludes that neither HIPAA nor the VHRPA confers a liberty interest on inmates. "HIPAA provides that '[a] person who knowingly . . . discloses individually identifiable health information to another person' without authorization shall be fined, imprisoned, or both." Payne, 998 F.3d at 660 (citing 42 U.S.C. § 1320d-6(a)(3), (b)). In Payne, the Fourth Circuit joined its sister circuits in holding that HIPAA does not create a private right of action. Id. Instead, it "delegates enforcement authority to the Secretary of the Department of Health and Human Services, reflecting Congress's intent to forgo creating a private remedy." Id. Thus, Lumumba "has no private right of action under HIPAA," id., and for similar reasons, the statute confers no protected liberty interest. In short, HIPAA is not "worded in such a way that an inmate could reasonably expect to enforce [it]" against correctional officials. Thompson, 490 U.S. at 465.

The court's review of the VHRPA also leads it to conclude that the state statute does not confer a protected liberty interest on inmates. In enacting the VHRPA, the Virginia

11

General Assembly "recognized an individual's right of privacy in the content of his health records." Va. Code Ann. § 32.1-127.1:03(A). However, the provisions of § 32.1-127.1:03 do "not apply to . . . [t]he release of health records to a state correctional facility pursuant to § 53.1-40.10 or a local or regional correctional facility pursuant to § 53.1-133.03." Id. § 32.1-127.1:03(C)(4). Section 53.1-40.10 allows state correctional facilities to "obtain medical and mental health information and records concerning [an inmate] from a health care provider, even when [an inmate] does not provide consent," and it expressly permits such information and records to be "exchanged among administrative personnel for the facility in which the person is imprisoned as necessary to maintain the security and safety of the facility, its employees, or other prisoners." Id. § 53.1-40.10. Thus, contrary to Lumumba's assertions, the VHRPA does not provide inmates with a general right to have their medical records or communications kept private. Moreover, even if the cited statutory provisions could be shown to be sufficiently mandatory, Lumumba has not plausibly alleged that deviating from the provisions imposed "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; see also Desper, 1 F.4th at 247 (emphasizing that satisfying this requirement is "a difficult task, and intentionally so") (citing Prieto v. Clarke, 780 F.3d 245, 255 (4th Cir. 2015)).

For these reasons, the court concludes that the complaint fails to state a viable due process claim stemming from the alleged failure to create a regulation that would require prison officials to keep Lumumba's medical information private. Accordingly, Count I is subject to dismissal under Rule 12(b)(6).

### B. Eighth Amendment Claims

Lumumba's remaining claims allege violations of the Eighth Amendment to the United States Constitution. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola, 884 F.3d at 486 (citing Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016)). Prison officials also have duty to provide "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 835, 832 (1994). A constitutional violation occurs "[w]hen a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs," DePaola, 884 F.3d at 486, or to "conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834.

To establish a violation of the Eighth Amendment, an inmate must satisfy two elements. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. at 834 (internal quotation marks and citation omitted). Second, the inmate must show that the prison official acted with a "sufficiently culpable state of mind." Id. In cases challenging prison conditions or the denial of medical care, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id.; see also Estelle v. Gamble, 429 U.S. 97, 104 (1976) (concluding that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain") (internal quotation marks and citation omitted).

#### 1. Claim Against Haynes, Sturdivant, and Spangler

Lumumba claims that Haynes, Sturdivant, and Spangler acted with deliberate indifference by refusing to meet with him privately regarding his complaints of panic attacks, anxiety, and depression. "To state a claim under Section 1983 for deliberate indifference to

13

serious medical needs, a prisoner must show that he had a serious medical need, and that officials disregarded that need and the substantial risk it posed." DePaola, 884 F.3d at 486. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." DePaola, 884 F.3d at 486. This is an "exacting standard" that is not met by a showing of "mere negligence or even civil recklessness." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). Likewise, disagreements between an inmate and a medical professional "are not actionable absent exceptional circumstances." Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021) see also Jackson, 775 F.3d at 178 (noting that the Fourth Circuit "consistently [has] found such disagreements to fall short of showing deliberate indifference").

Against this backdrop, the court concludes that Lumumba's complaint fails to state a viable Eighth Amendment claim against Haynes, Sturdivant, and Spangler. Even assuming that Lumumba's symptoms of anxiety and depression were sufficiently serious to warrant counseling or other assistance, he has not adequately alleged that the mental health professionals acted with the state of mind necessary to satisfy the subjective component. Lumumba acknowledges that a non-party QMHP spoke to him about his anxiety issues and provided him with anxiety handouts after he arrived at River North on June 5, 2020. He also acknowledges that Sturdivant and Spangler attempted to meet with him on subsequent occasions, but he refused to do so in the presence of correctional officers. As other courts

have recognized, "a plaintiff cannot refuse treatment . . . and then complain that defendants were deliberately indifferent to [his] medical . . . needs." Hahn v. Walsh, 915 F. Supp. 2d 925, 953 (C.D. Ill. 2013) (collecting cases). While Lumumba may have preferred meeting privately with mental health professionals, "his preference alone cannot establish deliberant indifference." James v. Pa. Dep't of Corr., 230 F. App'x 195, 197 (3d Cir. 2007). At most, Lumumba's allegations indicate that he disagreed with the mental health professionals' decision to have security staff present or nearby when meeting with him. Under the circumstances presented, where there is no reasonable expectation of privacy, the court is convinced that such disagreement fails to establish an Eighth Amendment violation. Because the complaint is devoid of allegations from which the court can reasonably infer that Haynes, Sturdivant, or Spangler ignored a serious need for medical treatment or knowingly disregarded a substantial risk of serious harm, the court concludes that the Eighth Amendment claim against these defendants must be dismissed.

### 2. Claims Against Kanode, Anderson, and John Doe

Lumumba's final claims arise from the use of canines at River North. He claims that John Doe acted with deliberate indifference to his safety on September 1, 2020, by "subjecting [him] to a menacing canine within 1 [foot] of his body[,] causing terror, severe anxiety, and a panic attack." Compl. ¶ 72. He asserts that Kanode and Anderson acted with deliberate indifference by implementing a policy that allowed canines to be located within two to three feet of inmates when walking to and from the recreation and dining areas.

The Eighth Amendment's prohibition of cruel and unusual punishment "applies to claims by prisoners against corrections officials challenging conditions of confinement."

15

Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Johnson v. Dellatifa, 357 F.3d 539, 546 (6th Cir. 2004) (internal quotation marks and citation omitted). The Fourth Circuit has made clear that "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eight Amendment claim regarding conditions of confinement." De'Lonta, 330 F.3d 30, 634 (4th Cir. 2003). In particular, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions" or "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Id. (internal quotation marks and citation omitted). And to satisfy the subjective component, a prisoner must show that the prison official actually "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. More specifically, a prisoner is required to show that the prison official "subjectively recognized a substantial risk of harm" and "subjectively recognized that his actions were inappropriate in light of that risk." Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (internal quotation marks and citation omitted).

Having considered Lumumba's allegations regarding the use of canines, the court concludes that the conduct of which he complains does not rise to the level of an Eighth Amendment violation. Turning first to the claim against Doe, Lumumba does not allege that Doe's canine touched his body, much less that the canine bit or scratched him. Instead, the complaint indicates that, on one occasion, Doe permitted his canine to run and jump within one foot of Lumumba before pulling the dog back. The court is convinced that the allegations

16

regarding this single incident do not describe the type of extreme deprivation required to state a claim under the Eighth Amendment. See, e.g., Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) ("As to Henslee's claim that a jail employee incited other inmates to attack him, Henslee does not contend that any inmates in fact attacked him. Mere threats by prison officials, without more, do not state a cognizable claim under § 1983."); Garcia v. Semple, No. 3:18-cv-01226, 2019 WL 5597771, at *30 (D. Conn. Oct. 30, 2019) (holding that allegations against a prison canine handler failed to state a claim under the Eighth Amendment where the plaintiff suggested that the handler did not handle her canine in a controlled manner but did not allege that the handler allowed the canine to touch or harm him); Keystone v. McDuffy, No. 7:18-cv-00334, 2018 WL 6070349, at *3 (W.D. Va. Nov. 20, 2018) (noting that "it is a simple fact of prison life that inmates may be compulsorily accompanied by guard dogs" and that a generalized fear of harm resulting from the use of dogs within the prison is insufficient to sustain an Eighth Amendment claim) (citing Kimbrough v. Fort Dodge Corr. Facility, No. 13-3005, 2013 WL 4670277, at *4 (N.D. Iowa Aug. 30, 2013)); Morva v. Johnson, No. 7:09-cv-00515, 2011 WL 3420650, at *7 (W.D. Va. Aug. 4, 2011) (collecting authority for the proposition that "[v]erbal harassment or idle threats to an inmate" do not give rise to a constitutional violation, even if they "cause[] an inmate fear or emotional anxiety").

Moreover, Lumumba has not alleged facts sufficient to show that Doe knowingly disregarded an excessive risk to his mental health. Although Lumumba claims that the incident caused him to experience another panic attack and anxiety, he does not allege that Doe had knowledge of his mental health history or that Doe was otherwise aware that his handling of

17

the dog posed a substantial risk of serious psychological or emotional harm. Accordingly, the court will dismiss the claim against Doe under 28 U.S.C. § 1915A(b)(1).

For similar reasons, the court will dismiss the claim against the supervisory defendants, Kanode and Anderson. While Lumumba faults these defendants for allegedly implementing a policy that allowed canines to come within two to three feet of his body, his complaint does not describe any dog bites or attacks that occurred as a result of the policy. Nor does it contain any other allegations from which the court can reasonably infer that the supervisory defendants knowingly disregarded an excessive risk to inmate health or safety. Because Lumumba has not plausibly alleged that Kanode and Anderson "acted with the state of mind required to establish the alleged constitutional deprivation," his claim against these supervisory defendants will be dismissed under Rule 12(b)(6).* Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010) (explaining when a supervisory official can be held liable for creating or implementing unconstitutional policies).

## Conclusion

For the reasons stated, the motion to dismiss filed by Clarke, Walters, Anderson, Kanode, Haynes, Spangler, and Sturdivant, ECF No. 22, is **GRANTED**, and the claim against Doe is dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). An appropriate order will be entered.

Entered: September 14, 2023

---

\* The court also notes that Lumumba's requests for declaratory and injunctive relief related to the alleged policy at River North have been rendered moot as a result of his transfer to a different facility. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.") (collecting cases).

Digitally signed by Michael F. Urbanski Chief U.S. District Judge
Date: 2023.09.14 11:06:51 -04'00'

Michael F. Urbanski
Chief United States District Judge

19